Bradford D. Conover (BC-7224)
Conover Law Offices
Attorneys for Plaintiff
800 Third Ave. (30th Floor)
New York, NY  10022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
ANNELL T. WILLIAMS,

                Plaintiff,

                                                             Index Nº _____

  -against-

CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF HOMELESS SERVICES, KEVIN
BRANCH and DONALD MYERS,

                Defendants.

------------------------------------------------------------------------x

## COMPLAINT

      Plaintiff, ANNELL T. WILLIAMS, by her attorneys, Conover Law Offices, for her complaint against defendants, CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF HOMELESS SERVICES, KEVIN BRANCH and DONALD MYERS, (collectively "defendants") respectfully alleges as follows:

### NATURE OF ACTION

      1.      This is an action for damages against defendants for gender discrimination, sexual harassment and retaliation in violation of the Civil Rights Act of 1964, 42  U.S.C. §2000(e) *et seq*., as amended in 1972 and 1991 (hereafter "Title VII"); the Executive Law of the State of New York, Article 15, §296 (1)(a) (hereafter "Executive Law"); and the Human Rights Law of the City of New York of 1991, §§8-107 and 502 (hereafter "HRL"); and for intentional infliction of emotional distress.

## JURISDICTION AND VENUE

2. The jurisdiction of this Court over this controversy is invoked pursuant to 28 U.S.C. § 1343 and 42 U.S.C. §§ 2000(e) - 5(f) and (g). The Court's pendent jurisdiction is invoked for the claims arising under state statutory and common law.

3. Venue in this Court is proper in that defendants maintain offices in this District.

## ADMINISTRATIVE PROCEEDINGS

4. On or about August 26, 2005, more than 180 days ago, plaintiff, Annell T. Williams, filed a timely charge alleging gender discrimination, sexual harassment and retaliation with the Equal Employment Opportunity Commission (hereafter "EEOC").

5. A Right-to-Sue Letter from the EEOC was received by the plaintiff within the last 90 days. A copy of the Right-to-Sue Letter dated June 30, 2006 is annexed hereto as Exhibit A.

## PARTIES

6. Plaintiff, Annell T. Williams ("plaintiff"), is a female citizen of the United States and, at all times relevant, resides and resided in the County of Bronx and State of New York.

7. At all times relevant, defendant, City of New York ("City"), is and was a municipal corporation amenable to be sued in its own name.

8. At all times relevant, defendant, New York City Department of Homeless Services ("DHS"), is and was a mayoral agency, department or other administrative subdivision of the defendant City.

9. At all times relevant, the Kingsboro Star Program, also known as Kingsboro Star Shelter (collectively "Kingsboro"), is and was a shelter care facility for homeless men operated by the defendants in the borough of Brooklyn.

10. At all times relevant, defendant, Kevin Branch ("Branch"), is and was an employee of the defendants and the Deputy Director of Kingsboro.

11. At all times relevant, defendant, Donald Myers ("Myers"), is and was an employee of the defendants and the Director of Kingsboro.

### FACTS

12. On or about June 21, 2004, plaintiff was employed by defendants as a Caseworker assigned to Kingsboro.

13. As a Caseworker, plaintiff's job duties included counseling and finding housing for the male clients at Kingsboro.

14. As a civil service employee, plaintiff's employment was subject to the standard one year probationary period.

15. At all times relevant, defendants Myers and Branch, as Director and Deputy Director, respectively, of Kingsboro, were in a supervisory position over plaintiff.

16. During her employment at Kingsboro, Branch and Myers subjected plaintiff to severe and persistent gender discrimination and sexual harassment.

17. On or about August 3, 2004, Branch called plaintiff into his office and, after complementing her as a "great worker," asked plaintiff what she was doing for the weekend and whether she would like to have dinner with him. When plaintiff declined his invitation, Branch handed plaintiff his cell phone number, instructing plaintiff to call him should she change

her mind.

    18.  During the period August 2004 through May 2005, Mr. Branch persisted and made repeated unwanted sexual advances toward plaintiff, stating:

    a.  "You really look nice in your clothes."

    b.  "Your husband must be happy."

    c.  "I could probably guess what color panties you have on."

    d.  "What "color are your panties?"

    e.  "Do you wear thongs or panties?"

    f.  "Your pussy looks like a fist in your pants."

    19.  On other occasions in or about August 2004 through May 2005, Branch made sexually suggestive gestures when she passed his office; asked plaintiff if he could come to her house; and asked if he could sleep with her.

    20.  Plaintiff did not respond to Branch's repeated sexual advances and refused his invitations.

    21.  After a meeting on or about August 17, 2004, Branch called plaintiff into his office and criticized her for asserting herself at a meeting that day attended by a housing specialist from DHS. Branch asked plaintiff "who was that cracker white lady in the meeting today" and advised plaintiff that he and Myers disapproved of plaintiff asking a question in the meeting in front of the housing specialist about Kingsboro's practice of denying beds to noncompliant clients. Branch then instructed plaintiff not to talk to her coworkers or Myers about his discussion with her.

    22.  On or about August 19, 2004, plaintiff met with Myers and informed him

about her discussion with Branch. Myers advised her that he "makes the rules," and that he was not happy with her question at the meeting. Myers concluded the discussion stating that plaintiff was a "good worker" and that "this is not a beat up session." He then asked plaintiff for a hug. Plaintiff, uncomfortable with Myer's request, but fearing retaliation, reluctantly complied. On various subsequent occasions, Myer's asked plaintiff for a hug at the conclusion of his discussions with her, and plaintiff complied.

23. On or about November 11, 2004, Branch assisted plaintiff in programing her Nextel phone and programed her phone with both his cell phone number and his walkie talkie number. When plaintiff questioned Branch as to why he had entered his personal Nextel and walkie talkie numbers on her phone, Branch stated to plaintiff that "it would be in your interest to use the numbers."

24. During her employment at Kingsboro, plaintiff's job performance was always satisfactory or better, and defendants, on or about November 14, 2004, presented plaintiff with a Certificate of Appreciation recognizing her "diligence and service" as "above and beyond."

25. On or about March 3, 2005, plaintiff's supervisor, Connie Roland, at Branch's instructions, reprimanded plaintiff about her office door being closed on Fridays and Saturdays and falsely accused her of "unprofessional behavior" towards clients. Male employees, including Branch, routinely closed their office doors, and it was plaintiff who had previously complained about how she was being treated by various clients at Kingsboro.

26. On or abut April 12, 2005, plaintiff was threatened by a male client, and she reported the threat to Branch.

27. On or about April 16, 2005, a male client attempted to strike plaintiff with a chair and verbally threatened her. Plaintiff reported the incident to Branch and Myers, who refused to transfer the client out of the shelter requiring that plaintiff secure a court order of protection.

28. Upon information and belief, Myers engaged in a pattern and practice of protecting Kingsboro male staff in the event of a client threat or assault on staff, but refused to provide the same protections to female staff, instead, routinely transferring out or terminating the female staff in such situations.

29. At various times on or about November 2004 through May 2005, plaintiff reported Branch's sexual harassment and Myers' discriminatory treatment to her direct supervisor, Connie Rolands, and to her coworkers, Saundra Brown and Phyllis Baines.

30. Plaintiff requested that her supervisor, Connie Rolands, switch desks with her to avoid contact with Branch, and requested a change in work shift to avoid Branch. Plaintiff was permitted to switch desks, but not to change shifts.

31. On or about March and/or May 2005, plaintiff's coworker, Community Assistant, Bradley Marshall, warned plaintiff to "be careful" because Branch and Myers were "out to get" her because she had not slept with Branch and because she had challenged Myers.

32. On or about April and/or May 2005, plaintiff's coworker, Caseworker, Phyllis Baines, stated to plaintiff that Branch told her that he "is out to get you so bad that you will not know where it came from."

33. Contrary to the personnel practice and policy of defendants, plaintiff never received a written performance appraisal and did not receive her "Task and Standards" job

description until on or about May 5, 2005.

34. On May 31, 2005, without prior notice, plaintiff was terminated without cause or explanation.

35. On or about June 2, 2005, plaintiff contacted defendants' representative from the Department of Labor Relations, Myles Driscoll, who stated that he did not know the reason why plaintiff was terminated other than she did not reach her probation period and that the Director of Kingsboro made the decision.

36. On or about June 9, 2005, plaintiff filed an internal confidential complaint of discrimination and sexual harassment with the DHS.

37. Defendants failed to adequately investigate her complaint or take remedial action.

38. On or about August 26, 2005, plaintiff filed an EEOC charge, and, in response to plaintiff's EEOC charge, defendants alleged that plaintiff was terminated for "unsatisfactory" work performance.

39. Upon information and belief, defendants' after-the-fact explanation for plaintiff's termination is a pretext for discrimination and retaliation, and defendants have fabricated and predated memoranda and documents in support of the pretext.

40. As a result of the discrimination, harassment and retaliation, plaintiff has suffered extreme mental distress, humiliation and embarrassment and a loss of income.

41. Each of the individual defendants participated in the discriminatory conduct and/or occupied supervisory positions with the power over plaintiff to do more than carry out personnel decisions made by others.

42. During the period of plaintiff's employment, defendants condoned and encouraged a policy and practice of discriminating and harassing plaintiff on the basis of her gender; subjected plaintiff to a hostile work environment; failed to provide plaintiff with an adequate means of complaint and redress; and retaliated against plaintiff.

**FIRST CLAIM FOR RELIEF AGAINST
THE CITY OF NEW YORK and THE NEW YORK CITY
DEPARTMENT OF HOMELESS SERVICES, TITLE VII**

43. Plaintiff repeats and re-alleges the allegations in paragraphs 1-42 as if fully set forth herein.

44. By reason of the foregoing, plaintiff, because of her gender and sex, was denied terms and conditions of employment; was subject to a hostile environment; was subject to *quid pro quo* sexual harassment; was subject to retaliation; and was discharged by defendants in violation of Title VII.

45. As a result of defendants' willful, knowing and intentional discrimination, plaintiff sustained substantial losses in earnings and other employment benefits, future pecuniary losses and has suffered and continues to suffer humiliation, mental and physical distress and anguish.

**SECOND CLAIM FOR RELIEF AGAINST
THE CITY OF NEW YORK, THE NEW YORK CITY
DEPARTMENT OF HOMELESS SERVICES, KEVIN
BRANCH and DONALD MYERS, EXECUTIVE LAW § 296**

46. Plaintiff repeats and re-alleges the allegations in paragraphs 1-45 as if fully set forth herein.

47. By reason of the foregoing, plaintiff, because of her gender and sex, was

denied terms and conditions of employment; was subject to a hostile environment; was subject to *quid pro quo* sexual harassment; was subject to retaliation; and was discharged by the individual defendants, who participated in the discrimination; had the power to make personnel decisions; and who aided and abetted the discrimination in violation of Executive Law § 296 *et seq*.

48. As a result of defendants' willful, knowing and intentional discrimination, plaintiff sustained substantial losses in earnings and other employment benefits, future pecuniary losses and has suffered and continues to suffer humiliation, mental and physical distress and anguish.

### THIRD CLAIM FOR RELIEF
### AGAINST THE CITY OF NEW YORK, THE NEW YORK CITY DEPARTMENT OF HOMELESS SERVICES, KEVIN BRANCH and DONALD MYERS, § 8-501

49. Plaintiff repeats and re-alleges the allegations in paragraphs 1-48 as if fully set forth herein.

50. By reason of the foregoing, plaintiff, because of her gender and sex, was denied terms and conditions of employment; was subject to a hostile environment; was subject to *quid pro quo* sexual harassment; was subject to retaliation; and was discharged by the individual defendants, who participated in the discrimination; had the power to make personnel decisions; and who aided and abetted the discrimination in violation of HRL §§ 8-107 and 502 *et seq*.

51. As a result of defendants' willful, knowing and intentional discrimination, plaintiff sustained substantial losses in earnings and other employment benefits, future pecuniary losses and has suffered and continues to suffer humiliation, mental and physical distress and anguish.

### FOURTH CLAIM FOR RELIEF AGAINST THE CITY OF NEW YORK, THE NEW YORK CITY DEPARTMENT OF HOMELESS SERVICES, KEVIN BRANCH and DONALD MYERS, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

52. Plaintiff repeats and re-alleges the allegations in paragraphs 1-51 as if fully set forth herein.

53. Defendants' conduct, as described above, was extreme, outrageous and was beyond the bounds of human decency and was solely motivated by an intention to harm plaintiff.

54. Defendants' conduct as described above, was wonton and reckless manifesting a conscious disregard for the rights of plaintiff.

55. As a result thereof, plaintiff has suffered, and continues to suffer, extreme humiliation, embarrassment, and mental and physical distress and anguish.

**WHEREFORE**, plaintiff respectfully requests that the Court enter judgment In plaintiff's favor and against defendants:

A. On the first claim for relief, for lost earnings, compensatory damages for emotional distress, and punitive damages in amounts to be determined by the trier of fact plus attorneys fees, costs and interest.

B. On the second claim for relief, for lost earnings and compensatory damages for emotional distress in amounts to be determined by the trier of fact plus costs and interest.

C. On the third claim for relief, for lost earnings, compensatory damages for emotional distress, and punitive damages in amounts to be determined by the trier of fact plus

attorneys fees, costs and interest.

      D.      On the fourth claim for relief, for compensatory damages for emotional distress, and punitive damages in amounts to be determined by the trier of fact plus costs and interest.

      E.      On all claims for relief, equitable relief including reinstatement and such other, further and different relief as the Court may deem just and equitable.

**PLAINTIFF HEREBY DEMANDS TRIAL
BY JURY ON ALL CLAIMS FOR RELIEF**

Dated:  New York, New York
          September 28, 2006

                        CONOVER LAW OFFICES
                        Attorneys for Plaintiff

                        By:  _____
                              Bradford D. Conover (BC-7224)
                              A Member of the Firm
                              800 Third Ave. (30th Fl.)
                              New York, NY  10022
                              (212) 588-9080